AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

In the Matter of the Search of information associated with **Frdy33@hotmail.com** that is stored at premises controlled by Apple.

Case No. 25mj6878

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ______ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Scott Mayer, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 12/11/2025

[signature]
*Judge's signature*

City and state: San Diego, California

Hon. Michelle M. Pettit, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS

I, Scott Mayer, Special Agent, with Homeland Security Investigations ("HSI"), being duly sworn, hereby state as follows:

## A. INTRODUCTION

1. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereafter "Apple") to disclose to the government records and other information, including the contents of communications, associated with an iCloud accounts connected to the following Apple IDs

a. Frdy33@hotmail.com, believed to be used by Arturo Gonzalez Aguilar ("**Subject Account 1**");

a. Frdy33@icloud.com, believed to be used by Arturo Gonzalez Aguilar ("**Subject Account 2**")(collectively "**Subject Accounts**");

for items which constitute evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 952 and 960 (Importation of Controlled Substances) (the "subject offenses"); as more fully described in Attachment B.

2. For the reasons set forth below, I believe there is probable cause for the requested warrants for the **Subject Accounts**, the contents for which are stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Apple Park Way, Cupertino, California 95014. The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in **Attachments A-1 and A-2**] and B, which are attached hereto incorporated herein.

## B. TRAINING & EXPERIENCE

3. I have been employed as a Special Agent with Homeland Security Investigations ("HSI") since December 2024. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various controlled substance trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in controlled substance trafficking investigations, I have gained a working knowledge of the operational habits of controlled substance traffickers, in particular those who attempt to import controlled substances into the United States from Mexico at Ports of Entry.

***Training and Experience Relating to the Use of Cellular Telephones***

5. I am aware that it is common practice for controlled substance traffickers to work in concert utilizing cellular telephones. A common tactic utilized by controlled substance traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry, and Tecate Port of Entry. With respect to the importation of controlled substances in this manner, I am aware that controlled substance traffickers in Mexico frequently communicate with the individual responsible for importing the concealed controlled substances into the United States. These communications can occur before, during and after the controlled substances are imported into the United States. For example, prior to the importation, controlled substance traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the controlled substance importation. When the importation is underway, controlled substance traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the controlled substances, provide instructions and warn accomplices about law enforcement activity. When the controlled substances have been imported into the United States, controlled substance traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the controlled substances to a destination within the United States.

//

***Scope of Search***

6. Based upon my training, experience, and consultations with law enforcement officers experienced in controlled substance trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Additionally, this same information is generally backed-up by Apple and maintained in the cloud [iCloud]. Specifically, searches of cellular telephones of individuals involved in the importation and distribution of controlled substances, and stored back-up data stored in Apple's cloud [iCloud][the **Subject Accounts**] may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and telephone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Subject Accounts**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

7. I am also familiar with Apple products and services and know, based on my training, experience, and conversations with other law enforcement officers.

8. The facts and conclusions set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, my review of documents and records related to this investigation, communications with others who have personal knowledge of the events, details, and circumstances described herein, and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates and times are approximate.

## D. FACTS IN SUPPORT OF PROBABLE CAUSE

### *Background of the Case*

9. On August 20, 2025, at approximately 3:25 PM, Arturo Gonzalez Aguilar ("Gonzalez"), a Mexican citizen, applied for entry into the United States from Mexico through the San Ysidro POE in vehicle lane #18. Gonzalez was the driver, sole occupant, and registered owner of a 2014 Nissan X-Trail ("the vehicle") bearing Baja California license plates.

### *Primary Inspection*

10. A Customs and Border Protection Officer ("CBPO") received two negative Customs declarations from Gonzalez. Gonzalez stated he was crossing the border to go to San Ysidro, California. The CBPO asked Gonzalez if anyone asked him to bring anything in (to the United States) from Mexico, and Gonzalez said no. The CBPO asked Gonzalez if anyone asked him to take anything into Mexico from the United States, and Gonzalez said no. The CBPO asked Gonzalez if he has had possession of his vehicle for the last 72

hours, and Gonzalez said he has had possession of his vehicle for the last five months. The CBPO asked Gonzalez what he did for a living, and Gonzalez said he was a police officer in Tijuana. The CBPO observed stacked floor mats on the rear passenger floor of the vehicle. The CBPO moved the mats, noticed the floor was lifted, and noticed a non-factory compartment was framed around the seats. The CBPO tried to remove the back floor carpet and observed a space discrepancy in the floor of the vehicle. The CBPO tapped the on the floor and noticed it sounded like hollow wood. Gonzalez and the vehicle were referred for further inspection.

11. A CBPO operating the Z-Portal X-Ray machine detected anomalies in the floor of the vehicle.

***Secondary Inspection***

12. A Canine Enforcement Team was conducting secondary inspection operations when the Human and Narcotic Detection Dog alerted to the passenger side floor of the vehicle.

13. Further inspection of the vehicle resulted in the discovery of 30 packages concealed in the driver and passenger floorboards of the vehicle, with a total approximate weight of 39.80 kgs (87.74 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of cocaine.

## C. BACKGROUND CONCERNING APPLE[1]

14. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

[1] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Manage and use your Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "Introduction to iCloud," available at https://support.apple.com/kb/PH26502; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; and "Apple Platform Security," available at https://help.apple.com/pdf/security/en_US/apple-platform-security-guide.pdf.

15. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and iCloud.com.

b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via iCloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

16. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address [often ending in @iCloud.com, @me.com, or @mac.com] or an email address associated with a third-party email provider [such as Gmail, Yahoo, or Hotmail]. The Apple ID can be used to access most Apple services [including iCloud, iMessage, and FaceTime] only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

17. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through

the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

18. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

19. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through iCloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

20. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

21. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

22. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the subject offenses. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the subject offenses.

23. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled

the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows Investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

24. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

25. Further, I know when a user has an Apple Watch with cellular and an activated cellular plan, the user can stay connected even when away from their iPhone. For all other models of Apple Watch, there are still things the user can do even when the user is away from their iPhone and not connected to Wi-Fi.[2] When the iPhone is off or out of range, the Apple Watch can use a Wi-Fi network to send and receive data. The watch can also connect to a cellular network if it's a cellular model. If a user set up an Apple Watch for a family member, they can use a cellular or Wi-Fi connection with their watch. A Wi-Fi or cellular

---

[2] The information was found on website: https://support.apple.com/guide/watch/useapple-watch-without-its-paired-iphone-apd0443fb403/watchos. According to Apple "Apple Watch has a built-in GPS that allows you to get more accurate distance and speed information during an outdoor workout without your paired iPhone. Apple Watch Series 3, Apple Watch Series 4, and Apple Watch Series 5 also have a built-in barometric altimeter to get more accurate elevation gain/descent information. The always-on altimeter in Apple Watch SE, Apple Watch Series 6, and Apple Watch Series 7 is even more accurate, showing your current elevation in real time."

connection lets the Apple Watch do the following things, even if your iPhone isn't with you.[3]

26. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators [e.g. encrypted communication platforms]. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

27. I know, based on my training, experience, discussions with other law enforcement officers, and background information related to Apple provided here, that an Apple ID is required to access and use the above captioned features on an Apple product. I know Defendant's cellular telephone was an Apple product because it had an Apple icon on the back of the cellular telephone and search warrant returns showed the cellular telephone had an iCloud account. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

***Temporal Scope of the Requested Search***

28. I know, based on my training and experience, including my experience within this case, that controlled substance trafficking often involves continuing communication that transpires over the days, weeks, and months prior to a distribution event. That activity often continues throughout the life of the overall conspiracy, which is an ongoing series of events, that can often last for months or years.

---

[3] The referenced information can be found on website: https://support.apple.com/enus/HT205547.

29. Finally, given the facts of this affidavit, my understanding of how Apple accounts can be used in furtherance of the offenses as described herein, and my awareness that Apple accounts can retain information for extended periods of time, I submit that this Court should authorize a search of the **Subject Accounts** for the period starting on **July 21, 2025** [thirty days prior to Defendant's apprehension] up to and including **August 20, 2025** [the day of Defendant's apprehension].

**E. <u>INFORMATION TO BE SEARCHED AND ITEMS TO BE SEIZED</u>**

30. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, Investigators or other federal agents and personnel will need to process the data into a format that may be reviewed. Investigators will then need to review the data to locate the items described in Section II of Attachment B. This process takes time. The personnel conducting the examinations into responsive data will **<u>complete the analysis within 90 days</u>** of the date the data is received from Apple, absent further application to this court.

//

//

//

//

//

//

//

//

//

//

**F. <u>CONCLUSION</u>**

31. Based on all of the facts and circumstances described above, there is probable cause to conclude that the **Subject Accounts** contains evidence of violations of the subject offenses and will contain electronic evidence of those violations, as more fully described in Attachment B.

32. **WHEREFORE**, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to seize and search the items described in Attachments **A-1** and **A-2**, and the seizure of items listed in the corresponding Attachment B.

Scott Mayer
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 11th day of December 2025.

Michelle M. Pettit

HON. MICHELLE M. PETTIT
United States Magistrate Judge

## ATTACHMENT A-1

**Property to Be Searched**

This warrant applies to information associated with Apple ID **Frdy33@hotmail.com** ("**Subject Account 1**") that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

# ATTACHMENT B

## Particular Things to be Seized

### I. Service of Warrant

The officer executing the warrant shall permit Apple Inc., as the custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

### II. Information to be disclosed by Apple Inc. ("Apple")

To the extent that the information described in Attachment A-1 or A-2 is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A-1 or A-2:

a. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b. All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"),

Mobile Identification Numbers ( "MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d. The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and

updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps to include date and time stamps;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

**III. Information to be Seized by the Government**

All information described above in Section II that constitutes evidence of violations of 21 U.S.C. §§ 952 and 960 (Importation of Controlled Substances)(the "subject offenses"); limited to the period of July 21, 2025 up to and including August 20, 2025, and to the seizure of evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and telephone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Subject Account; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

All of the above constituting evidence of a violation of the subject offenses.